**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

**IN RE:**
    **YEATTS CONTRACT OF VIRGINIA, INC.**

                      **Debtor.**                      **Case No. 05-74983-A**

_____

**MEMORANDUM OPINION AND ORDER**

      The Court has been requested by counsel for the petitioning creditors, AC Furniture Company, Inc., Dillon Furniture Manufacturing Company and Cervitor Kitchens, Incorporated, to award such counsel attorneys' fees and costs for filing the involuntary petition in this case and beyond.  Their application is made pursuant to 11 U.S.C. §§ 503(b)(3)(A) & (4).   The award of said attorneys' fees is opposed to a limited extent by both Mr. Yeatts, principal of the debtor, and by the trustee.  There is no question, given the statutory language of § 503(b), that counsel for petitioning creditors are entitled to some payment for their services, however the Court must decide 1) the period of time for which they may be compensated regarding the initiation of the involuntary bankruptcy and beyond and 2) whether their requested fees during the approved time period are necessary and reasonable.

      This is a core proceeding over which this Court has jurisdiction under 28 U.S.C. §§ 157(b)(2) and 1334(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  After taking the matter under advisement, we make the following Findings of Fact and

Conclusions of Law.

## FINDINGS OF FACT

The facts in this case are not in dispute.

On June 9, 2005, AC Furniture, Co, Inc., Dillon Furniture Manufacturing Co. and Cervitor Kitchens Incorporated ("Petitioning Creditors") filed an Involuntary Petition for relief under Chapter 7 of the Bankruptcy Code (the "Code") against Yeatts Contract of Virginia, Inc. (the "Debtor"). Believing the principle of the Debtor to have a last known address in Northern Virginia, the involuntary petition was filed in the Alexandria Division of the Court.

On July 12, 2005, an Order for relief was entered by the Court after no response was received from the Debtor.

On July 13, 2005, a joint motion to transfer the case from the Alexandria division to the Norfolk Division of the Court was filed by the Petitioning Creditors and Cope Industries, Inc., Underwood Enterprises, Inc., Allied Contract, Inc., Stonehill Sales and Services, LLC and RMP Associates, Inc. (collectively known as the "alleged Primary Secured Creditors"). In the motion the Petitioning Creditors and the alleged Primary Secured Creditors stipulated that the Norfolk Division was the preferred venue for all further proceedings.

After the petition was filed, the Petitioning Creditors experienced great difficulty in securing the filing of the Debtor's schedules, lists and statements. On July 13, 2005, an Order was entered designating Jim Yeatts, President of the Debtor, to perform the duties

2

of the Debtor, including filing lists, statements and schedules as required by the Code. On August 2, 2005, given that the Debtor and its designee had failed to do so, the Petitioning Creditors were ordered to file schedules, statements and lists in the case on or before August 15, 2005. On August 4, 2005, the Petitioning Creditors filed for an extension to September 6, 2005, to complete the required filings in the case. The motion stated that the Petitioning Creditors had no access to the records of the Debtor and that they would again move to have Jim Yeatts or some other designee of the Debtor, who did have access to all of the necessary records, appointed to file the appropriate paperwork with the Court. The motion was granted by Order entered August 5, 2005. On September 8, 2005, after notice and a hearing the case was transferred to the Norfolk Division of the Court. On September 22, 2005, the Petitioning Creditors filed a motion to require Jim Yeatts to file the necessary schedules, statements, and lists on behalf of the debtor, to which Mr. Yeatts filed a limited objection, stating that he could not be compelled to be the representative of the Debtor, but that he would agree to filed the required paperwork if he would be compensated for his time and the cost of assistance of counsel in so doing. On the date of the hearing, October 25, 2005, the Petitioning Creditors and Mr. Yeatts, by counsel, agreed that Mr. Yeatts would file the requested papers, but only on his stated conditions.

After transfer to the Norfolk Division the trustee was appointed by the United States Trustee on September 15, 2005, and he has administered the case since that time.

On October 4, 2005, the alleged Primary Secured Creditors each filed Motions for Relief from Stay. Counsel for the Petitioning Creditors defended against these motions,

as did the trustee, once appointed, who filed a significant action against these creditors,[1] mainly in response to the relief motions. The trustee settled that suit in March, 2006, thereby collecting a guaranteed $140,000 for the estate and the benefit of the unsecured creditors.[2]

On March 10, 2006, counsel for the Petitioning Creditors filed the instant application. The application seeks the compensation of counsel for the Petitioning Creditors, which consists of two law firms, Woods Rogers PLC of Roanoke, Virginia, as primary counsel and Crenshaw, Ware & Martin, PLC located in Norfolk, Virginia, as local counsel. The primary attorneys at Woods Rogers that worked on the case are Richard Maxwell and Webb King. The only attorney at Crenshaw, Ware & Martin who provided services in this case was Donald Schultz. The application seeks approval of compensation from May 3, 2005, to December 8, 2005, in the amounts of $8,434.17 in fees and $687.51 in costs to Woods Rogers PLC and $4,582.50 in fees to Crenshaw, Ware & Martin. On March 23, 2006, the trustee filed an answer and objection and Mr. Yeatts filed a limited objection to the application. Neither objected to the work performed by the lawyers for the petitioning creditors; the only issue in both objections is the appropriate cut off date for their compensation.

At the hearing on March 27, 2006, on the application Mr. Maxwell revised his request from $8,434.12 in fees to $7,642.62, and he reduced the requested expenses from $687.51 to $502.11. The fee reduction related to the elimination of the entries of:

---

[1] Adversary proceeding number 05-7114-A, Complaint to avoid preferential transfers pursuant to 11 U.S.C. §§ 547, 548 and Va. Code § 55-80.
[2] The settlement agreement, *inter alia*, not only settled the estate's claims against the alleged Primary

| | |
|---|---|
| 10/19/05 | $43.50 |
| 10/19/05 | $69.00 |
| 11/01/05 | $43.50 |
| 11/08/05 | $46.00 |
| 12/08/05 | $46.00 |
| 12/11/05 | $23.00 |
| 12/13/05 | $14.50 |
| 01/03/06 | $87.00 |
| 01/04/06 | $14.50 |
| 01/04/06 | $24.50 |
| 01/11/06 | $15.50 |
| 01/13/06 | $46.50 |
| 01/13/06 | $96.00 |
| 01/16/06 | $31.00 |
| 01/16/06 | $24.00 |

There was no elimination of charges on the bill of Crenshaw, Ware & Martin.

Before getting to the merits of the case, however, we must address the many mathematical errors contained in the Woods Rogers billing statement. There are many entries in the bill with incorrect calculations of the hours spent times the proper hourly rate of the particular lawyer, only one of which is not in favor of the billing attorneys. The Court concludes that Mr. Maxwell's billing rate was $230.00 until January 1, 2006, when it was raised to $240.00. Mr. King's rate in 2005 was $145.00 and was raised to $155.00 on January 1, 2006. Based on those rates the following reflect the billing errors by Woods Rogers:

| | | | | | |
|---|---|---|---|---|---|
| 05/03/05 | billed | $339.56 | corrected | $322.00 | -17.56 |
| 05/23/05 | billed | $ 70.04 | corrected | $ 58.00 | -12.04 |
| 06/01/05 | billed | $ 50.67 | corrected | $ 14.50 | -36.17 |
| 06/08/05 | billed | $ 60.49 | corrected | $ 46.00 | -14.49 |
| 06/24/05 | billed | $ 35.71 | corrected | $ 29.00 | - 6.71 |
| 08/02/05 | billed | $ 73.09 | corrected | $ 69.00 | - 4.09 |
| 10/04/05 | billed | $241.25 | corrected | $101.50 | -139.75 |

---

Secured Creditors, but also their claims against the estate.

      10/04/05    billed $211.50    corrected    $ 92.00    -119.50

      01/03/06    billed $ 87.00    corrected    $ 93.00    + 6.00

These reductions total a net amount of $344.31 and are in addition to the charges voluntarily deleted by Woods Rogers as described above.

Mr. Schultz' firm's mathematical calculations appear to be correct.

## ARGUMENTS

Counsel for the Petitioning Creditors argues that this case is far from typical and notes that the case law in this area varies greatly. They are asking for compensation from a time prior to the filing of the petition through the time of their defense against the Motions for Relief filed by the alleged Primary Secured Creditors. In support of their application the Petitioning Creditors point to the substantial difficulty they encountered in locating the principal of the debtor, Mr. Yeatts, and then the even greater difficulty in requiring him to file the necessary paperwork on behalf of the debtor. They further argue that but for their defense to the Motions for Relief, the alleged Primary Secured Creditors would have usurped all rights to the Debtor's accounts receivables, a very valuable asset of the estate. The Petitioning Creditors argue that the payment of their attorneys' fees and costs is reasonable even in light of the settlement that the trustee reached with the alleged Primary Secured Creditors, as it was their participation and cooperation with the trustee that was the catalyst for the trustee's adversary proceeding referenced above.

Mr. Yeatts maintains that petitioning creditors' counsel should receive

6

compensation only up to the time the Order of Relief was entered in this case, i.e. July 12, 2005.  Similarly, the trustee urges the Court to use the cutoff date of his appointment, September 15, 2005.  The Assistant U. S. Trustee has no objection to the fees requested, acknowledges that various courts have handled the issue differently and leaves the cut off date for compensation to the Court's discretion.

## CONCLUSIONS OF LAW

Sections 503(b)(3)(A) and (4) of the Code allow the payment of a creditor's expenses and attorneys fees associated with filing an involuntary bankruptcy petition against a debtor.[3]  These statutes, however, do not address the time period for which the services are compensable. This is a novel issue in this circuit;[4] therefore this Court must

---

[3] The sections provide in relevant part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including - - . . .
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by - -
>
> (A) a creditor that files a petition under section 303 of this title; . . .
>
> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, an reimbursement for actual, necessary expenses incurred by such attorney or accountant.

11 U.S.C. § 503(b)(3)(A) and (4) (2005).

[4] This Court has addressed payment of petitioning creditors fees in an involuntary bankruptcy filing, but under § 503(b)(3)(B), which includes a prerequisite of court approval before such an expense can be allowed. *In re Elder*, 321 B.R. 820 (Bankr. E.D. Va. 2005).  There is no such requirement in the preceding clause, however, which is at issue in this case.

look to other jurisdictions for guidance.

The purpose in allowing the payment of fees and costs as an administrative expense is to encourage creditors to file involuntary petitions when necessary to prevent a debtor from dissipating all his assets to the detriment of his creditors. *In re On Tour, LLC*, 276 B.R. 407, 416-17 (Bankr. D. Md. 2002), *see also In re Westek Georgia, LLC*, 317 B.R. 567, 569 (Bankr. M.D. Ga. 2004). Additionally, there is an assumption that the filing is beneficial to all creditors. *In re Westek Georgia, LLC*, 317 B.R. at 569. Given, however, that the administrative expense is treated as a priority claim, "any recovery must be subject to strict scrutiny by the court. Priority statutes are strictly construed[, and t]he burden of proof is on the party making the administrative claim...." *In re Catalina Spa & R.V. Resort, Ltd.*, 97 B.R. 13, 17 (Bankr. S.D. Cal. 1989) (citations omitted), *see also In re Stoecker*, 128 B.R. 205, 208 (Bankr. N.D. Ill. 1991) (holding that priority statutes are strictly construed and that the standard of proof is a preponderance of evidence), *In re Crazy Eddie, Inc.*, 120 B.R. 273, 278 (Bankr. S.D.N.Y. 1990) ("It is beyond dispute that all applicants under § 503(b) have the burden of establishing entitlement to an award of compensation by a preponderance of evidence.").

Section 503(b)(4) measures the amount of the award of fees "by the time, the nature, the extent, and the value of such services." *In re Klein*, 328 B.R. 597, 598 (Bankr. M.D. Fla. 2005). The services rendered must benefit the entire estate, not just the creditors applying for compensation. *In re Westek Georgia, LLC*, 317 B.R. 567 (Bankr. M.D. Ga. 2004) (citing *In re Stoecker*, 128 B.R. at 208). Claims for duplicative services are not allowed. *In re Paolino*, 71 B.R. 576, 580 (Bankr. E.D. Penn. 1987), *In re*

8

*Rorabaugh*, 62 B.R. 623, 627 (Bankr. D. Kan. 1986) (holding that compensation was not allowable for work done by the petitioning creditors' counsel when that same work had been done by the appointed trustee and debtor's counsel). The fees and costs must be necessary and reasonable as well. *In re On Tour, LLC*, 276 B.R. at 418, *see also In re Stoecker*, 128 B.R. at 210 ("[F]ees incurred that are unnecessary and excessive will not be allowed.") While courts agree on these elements, one on which they do not agree is the cut off date for compensation.

Some maintain that the petitioning creditors are entitled to an administrative expense for their counsel fees until the date the order of relief is entered. See *Collier on Bankruptcy*, Vol. IV, ¶ 503.10[2][b], p. 503-61 (15th Ed. Rev.), *In re Indian Motorcycle Apparel and Accessories Co., Inc.*, 174 B.R. 659 (Bankr. D. Mass. 1994), *In re Crazy Eddie, Inc.*, 120 B.R. 273 (Bankr. S.D.N.Y. 1990), *In re Hanson*, 90 B.R. 405 (Bankr. D. Minn. 1988).

Other courts have found that "[m]erely obtaining an Order for Relief serves no purpose at all if the case goes nowhere[,]" and therefore awarded compensation for services provided past that date. *In re On Tour, LLC*, 276 B.R. at 417, *see also In re Klein*, 328 B.R. 597, 599-600 (Bankr. M.D. Fla. 2005) (allowing compensation for services provided even after the trustee was appointed, when the petitioning creditor acted in good faith and the trustee accepted the services), *In re Stoecker*, 128 B.R. 205 (Bankr. N.D. Ill. 1991). This Court is more persuaded by the latter cases and finds that compensation is allowable even after the entry of the order for relief if the services provided benefit the estate as a whole. Consequently, this Court must analyze the

services provided after the date relief was ordered, and determine their benefit to the estate.

This case is certainly not the usual involuntary Chapter 7 case. Substantial effort was expended by petitioning creditors' counsel from May 3, 2005, to June 9, 2005, in preparing and filing the involuntary petition. While awaiting a response from the Debtor, from June 13, 2005 to July 12, 2005, counsel for the Petitioning Creditors continue to provide necessary services such as interacting with other creditors and attempting to secure cooperation from the Debtor. The Debtor never answered and relief was ordered. After relief was ordered counsel for the petitioning creditors then faced a change of venue issue and further difficulties, including making numerous contacts and court appearances, regarding the filing of the statements, lists and schedules and the designation of Mr. Yeatts as the person responsible for filing the same. All of these post-relief services provided from July 13, 2005, to September 14, 2005, dealt directly with the initial administration of the case and all occurred at a time when no trustee had been appointed. After the trustee was appointed on September 15, 2005, counsel for the petitioning creditors completed work from September 20, 2005, to September 28, 2005, to secure the filing of required paperwork in the case. All these services were integral to the advancement of the bankruptcy case and benefited the estate; therefore, the efforts of counsel through the month of September, 2005, are reimbursable.

A review of the activities of counsel thereafter, beginning with the first entry for October, 2005, reveals they were primarily related to the Motions for Relief from Stay filed by the alleged Primary Secured Creditors and the trustee's proposed settlement of

his complaint filed against those same six alleged Primary secured Creditors on November 23, 2005.[5] In order to be compensated for these activities they must have contributed to the estate as a whole and must not have been a duplication of services.

The court in *In re On Tour, LLC* did allow compensation for services provided by the petitioning creditors after the appointment of the Chapter 7 trustee and through the conversion of the case to one under Chapter 11 when the Petitioning Creditors moved for the immediate appointment of a Chapter 11 trustee; however, the court only did so because it found that "the [petitioning creditors] alone were responsible for the effective administration of this case for the 180 creditors scheduled" during that time. *In re On Tour, LLC*, 276 B.R. at 417.

Unlike in *In re On Tour, LLC*, the petitioning creditors were not saddled with sole responsibility for the administration of this case after the appointment of the Chapter 7 trustee.. The trustee in the instant case was appointed as a matter of regular course on September 15, 2005, shortly after the case's transfer to the Norfolk Division. From that moment forward, he began his duties in earnest. The trustee did state during the March 27, 2006, hearing that he interacted with the petitioning creditors after his appointment analyzing the potential insider preference claims against the alleged Primary Secured Creditors, but never moved for their employment as counsel and conducted his own investigation of the case. The Court does not discount work done by the petitioning creditors at any time during this case, and in fact gives deference to their continued work immediately following the appointment of the trustee as beneficial to the estate as a

---

[5] By the date of the adversary proceeding filed by the trustee, the petitioning creditors had acquired

whole and has already allowed them reimbursement for the two weeks after the trustee's appointment.  The Court cannot allow any compensation beyond that time, however, as the petitioning creditors have failed to demonstrate any benefit to the whole estate based upon their services **alone** after the end of September, 2005.  After his appointment, the trustee was acting in the estate and unsecured creditors' best interests and used his business judgment to determine how best to proceed with the case.  Counsel for the Petitioning Creditors had taken on the representation of other creditors at the time of their defense of the Motions for Relief filed in the case and have failed to meet their burden of proof that they were acting for the benefit of the estate as a whole rather than just for the benefit of their clients.  "In short, [counsel for the petitioning creditors] ha[ve] not articulated or demonstrated how [their] particular efforts [after September, 2005] facilitated the progress of the case in the distinct manner contemplated by Congress...."  *In re Paolino*, 71 B.R. at 580.

      Having granted the entitlement to certain administrative expenses, now the Court must examine those allowed expenses to determine whether they are necessary and reasonable.

      No one has objected to the hourly rates charged by counsel for the petitioning creditors and the Court notes that they are comparable to similarly situated attorneys who regularly submit fee applications to this Court; the fees are reasonable.  Additionally, no one has objected to the form of the bill and the Court finds it is easy to ascertain from the itemized statements the nature of the services rendered.  As stated above, the

---

additional clients who were more active in the trustee's adversary proceeding.

services provided by counsel for the petitioning creditors from May 3, 2005 to September 30, 2005, were related to the preparation, filing, and initial administration of the case, all of which was necessary to effectuate the bankruptcy filing.  Therefore, we conclude that counsel for the petitioning creditors is entitled to reimbursement from the estate for fees earned during those dates. The fees reimbursable to Crenshaw, Ware & Martin are $195.00 and no costs were requested.  The fees reimbursable to Woods Rogers total $2,947.36, and the firm's recoverable costs are $339.34.

None of the voluntary reductions by Woods Rogers in its statement bear on the awards set forth above, as they all relate to work performed after September 30, 2005.

**IT IS SO ORDERED.**

Norfolk, Virginia

_____
Judge, United States Bankruptcy Court

Copies to:
    Richard C. Maxwell, Esquire
    Donald C. Schultz, Esquire
    Robert B. Van Arsdale, Esquire
    Tom C. Smith, Jr., Trustee
    Karen M. Crowley, Esquire
    Peter G. Zemanian, Esquire
    Barry W. Spear, Esquire
    John D. McIntyre, Esquire
    Michael P. Cotter, Esquire